Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
　　A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501　　　　Fax  (888) 316-6107
e-mail: baruchcohen@baruchcohenesq.com

*Attorney tor Plaintiff BELINDA JARVIS*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SALVADOR PEREZ,<br>DBA FDBA DESIGN UPHOLSTERY,<br><br>　　　　　Debtor<br>_____<br>BELINDA JARVIS,<br>　　　　　Plaintiff<br>vs.<br>SALVADOR PEREZ, DBA FDBA DESIGN UPHOLSTERY<br>　　　　　Defendant(s) | Case No.  2:18-bk-21560-VZ<br><br>Adversary No. _____<br><br>Assigned to the Honorable Vincent Zurzolo<br><br>Chapter 13<br><br>**COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 1328(a)(4)** |

　　　　**TO THE HONORABLE VINCENT P. ZURZOLO, DEBTOR, DEBTOR'S COUNSEL, THE CHAPTER 13 TRUSTEE AND ALL OTHER INTERESTED PARTIES:**

　　　　Plaintiff, BELINDA JARVIS (hereinafter, "Plaintiff"), creditor and party in interest in the above-referenced bankruptcy proceeding, files this *Complaint* to Determine Nondischargeability of Debt under 11 U.S.C. §§ 1328(a)(4) (the "Complaint") against Debtor/Defendant SALVADOR PEREZ, DBA FDBA DESIGN UPHOLSTERY (hereinafter, "Defendant"), and in support thereof respectfully represents to the Court as follows:

7/3-12:51am

**JURISDICTION & PARTIES**

1. This court has jurisdiction over the subject matter of this Complaint as a core proceeding pursuant to the provisions of 28 U.S.C.§ 1334, 28 § U.S.C. 157(b)(2)(I), 11 U.S.C.§ 1328(a)(4) since this is a proceeding to determine the nondischargeability of a particular debt, and is related to the Chapter 13 bankruptcy case of Debtor/Defendant SALVADOR PEREZ, DBA FDBA DESIGN UPHOLSTERY (the "Debtor") 2:18-bk-21560-VZ, which is currently pending before this Court in the Central District of California, Los Angeles courthouse.[1]

2. Venue is proper pursuant to 28 U.S.C. § 1409.

3. The Debtor may be served, pursuant to Fed. R. Bankr. P. 7004(b)(1), by mailing a copy of the Summons and Complaint to Debtor's counsel of record at Cynthia Grande, Esq., 3812 Sepulveda Blvd # 220, Torrance CA 90505and to Debtor at Salvador Perez, dba Fdba Design Upholstery, 316 N. Avalon Blvd., Wilmington CA 90744, which address constitutes either the Debtor's dwelling house or usual place of abode or the place at which the Debtor regularly conducts a business or profession.

4. Plaintiff is an individual residing in Los Angeles, California. Plaintiff is also a creditor of the Debtor.

5. Defendant is an individual residing in Wilmington, California.

**FACTUAL ALLEGATIONS AGAINST DEFENDANT**

**BACKGROUND**

6. Plaintiff was a residential tenant in Defendant's upholstery shop in Wilmington, California. During her move-in inspection, Plaintiff asked Defendant if his large breed dog (Kiko) was safe and he said it was. Defendant misrepresented to Plaintiff that Kiko was "safe" even though he kept Kiko as a guard dog for his commercial property which was open to the

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

public. Defendant never warned Plaintiff about the guard dog or its aggressive nature.

7. Plaintiff moved in October/November 2016. Kiko would growl, bark, and bare its teeth at Plaintiff when she was simply trying to come and go from her room. Plaintiff had to walk past Kiko to get to her room. Kiko would growl, bark, and snarl at Plaintiff regularly - about two to three times a week. On several occasions, Plaintiff had to call Defendant to restrain Kiko who was acting aggressively towards her, so she could leave her room. When Defendant did not answer her call, Plaintiff was forced to run past the dog to leave.

8. Plaintiff later learned that Defendant kept Kiko as a guard dog. Defendant never warned Plaintiff about the guard dog or its aggressive nature. He never enrolled Kiko in any obedience or behavioral training even though he kept Kiko as a guard dog in a public place of business. In fact, the only training Kiko received was from Defendant himself (who has no dog behavior training or experience) and it was limited to training Kiko to relieve itself outdoors.

9. Defendant did not take Kiko to a veterinarian for check-ups or vaccinations. He purchased an unidentified vaccine in Tijuana, Mexico and administered it to Kiko. He has no veterinarian training and is not qualified to provide medical care to animals. He admitted he did not know the vaccine he administered to Kiko, or the effects it may have had on Kiko's behavior. (Id.) In fact, the only training Kiko received was from Defendant himself (who has no dog behavior training or experience) and it was limited to training Kiko to relieve itself outdoors.

10. On 1-12-2017, Plaintiff bent down to tie her shoe outside of her room when suddenly Kiko attacked her and bit her face. A witness to the incident told Defendant that his dog had attacked Plaintiff's face. The dog bite left Plaintiff with permanent facial disfigurement and nerve damage.

11. After the attack, Plaintiff decided to move out. Fearful that Kiko would attack again, Plaintiff asked Defendant's son to restrain Kiko while she moved her things. He refused to

7/3-12:51am

-3-

|   |     |                                                                                      |
|---|-----|--------------------------------------------------------------------------------------|
| 1 |     | do so despite the recent attack by his guard dog. Plaintiff had to slam the door on Kiko |
| 2 |     | because it started growling again.                                                   |
| 3 | 12. | Defendant knew Kiko, a guard dog meant for protecting his commercial property, was   |
| 4 |     | dangerous and aggressive toward Plaintiff but chose to do nothing. The manager of a hotel |
| 5 |     | adjacent to Defendant's upholstery shop told Plaintiff that there have been many     |
| 6 |     | complaints about Kiko barking and growling at people and that they are afraid of it. |
| 7 | 13. | Defendant willfully and consciously disregarded his guard dog's aggressive behavior  |
| 8 |     | toward Plaintiff before and after his dog mauled Plaintiff's face.                   |
| 9 | 14. | Before and after the mauling, Defendant acted despicably and in conscious and willful |
| 10|     | disregard for the safety and rights of his tenant, Plaintiff.                        |
| 11| 15. | Below are photographs depicting Plaintiff's injuries.                                |




-4-

7/3-12:51am







16. On or about 1-17-2017, Plaintiff underwent the painful process of having her sutures removed from her face. It was noted that her ability to smile and the right angle of her lip was restricted secondary to inferior lip laceration on the right. It was also noted that she was unable to purse her lips.

17. On or about 1-23-2017, Plaintiff returned to the Harbor-UCLA emergency room due to pain and increased swelling the areas where she was bit by Defendant' dog. It was noted that Plaintiff was concerned that her right lower lip was not healing properly. The examination showed that the right lower lip was thickened without obvious signs of infection.

18. On or about 2-9-2017, Plaintiff returned to Harbor-UCLA for follow up with otolaryngology. Plaintiff reported numbness, tingling and burning on the right side of her face. She expressed concerns that the scars on her face were raised. Plaintiff received a Kenalog injection in her face.

19. On March 7, 2017, Plaintiff returned to Harbor-UCLA for another follow up with otolaryngology. She reported having shooting pain that wakes her in the evenings. The records show Plaintiff had right marginal nerve weakness. It was noted that she had drooling and lack of sensation to upper lip and lower lip. She expressed concern about the scars. Dr. Karam Badran recommended a speech pathology consult to help strengthen lower lip function and possible scar revision.

20. On July 7, 2018, Plaintiff was evaluated by a plastic surgeon, Dr. Robert Applebaum. He observed severe scarring in the right chin and lower lip area as well as the upper right cheek area. In the upper right cheek, Dr. Applebaum noted a 3 cm scar with an arrow-shaped appearance and a visible trapdoor deformity. The right chin area has a vertical curved scar extending from the lip to the base of the chin, measuring 4 cm in one vertical component and 2 cm in perpendicular component. He also noted significant fullness and bunching of the tissue in the right chin area. Upon smiling, Dr. Applebaum noted an accentuation of the injury and scarring. There is also a trapdoor deformity at the lower end of the scar toward the base of the chin

21. Dr. Applebaum noted decreased sensation to pinprick in the area of the dog bite injury in the right chin and lower lip area. Plaintiff's anterior open bite is at 3.2 cm which is at the low end of normal. Plaintiff has a visible cosmetic deformity with loss of mucosal portion of the lip, as it tapers into the right oral commissure. Plaintiff complained that the lip gets trapped, which contributes to the difficulty in speaking certain words and the whistling that occurs while she speaks.

22. Dr. Applebaum's diagnoses are as follows: 1. Status post severe dog bite injury to the right cheek and right chin and lip area. 2. A 3cm trapdoor deformity scar of the upper left cheek. 3. A complex set of scars in the right chin area measures 4cm and 2cm with a trapdoor deformity and loss of local sensation. 4. Cosmetic deformity of the right lateral lip with inversion of the lower lip at the lateral oral commissure.

23. Dr. Applebaum opined that Plaintiff's injuries have reached a permanent-and-stationary status. With regard to the right upper cheek trapdoor deformity scar, Dr. Applebaum recommended that this scar should be revised to reduce the trapdoor deformity. He anticipates a single treatment with a 60% to 70% level of improvement after the scar revision surgery. With regard to the lower lip and chin scar complex, this difficult complex scarring will require scar revision surgery. Dr. Applebaum anticipates a single procedure to reduce the lower chin bunching of tissue and the trapdoor deformity. It is his opinion that even with a complex plastic surgery reconstruction, the scarring will only be improved in the range of 50%. Trapdoor deformities in this area are difficult to correct completely and oftentimes can recur to some degree. The interaction of the scar tissue with the right lower lip creating a mucosal inversion of the lateral lip will be very difficult to improve because it is likely due to deep muscle loss eliminating the portion of the lip retractor when she animates. There are no surgical methods to re-establish a normal lower lip retraction mechanism when the injury has been so severely disrupted.

**ESTIMATED COST OF FUTURE MEDICAL TREATMENT**

24. The estimated cost of future medical treatment outlined in Dr. Applebaum's report are as follows:

   a. Scar revision of right upper cheek trapdoor deformity scar (1 treatment): Cost per treatment, surgeon's fee is $3,500.00 and facility/anesthesia is $2,500.00; total fee is $6,000.00.

   b. Complex scar revision of right chin and lower lip scar: Anticipate a single

     treatment. Surgeon's fee is $6,500.00 and facility/anesthesia fee is $4,500.00; total fee is $11,000.00.

  c. Dr. Applebaum opines that even with the use of complex plastic surgery reconstructive procedures, Plaintiff will have moderate levels of improvement in both the cosmetic and functional aspects of her injury.

25. In addition to the apparent permanent deformities in her face, she has lost sensation in the right side of her face and chin area. Plaintiff continues to suffer intermittent shooting pain in the right side of her face. Plaintiff is self-conscious and embarrassed about her appearance. Further, the obvious scars are a constant reminder of the horrific attack.

## MEDICAL SPECIALS

26. Plaintiff's medical specials to date are as follows:

  a. Los Angeles Fire Department……………………………………….$ 1,566.00

  b. Harbor-UCLA (January 2017, unk for Feb. 2017)…… …………..$ 9,660.00

  c. Dr. Applebaum..……………………………………………….....$ 950.00

  d. Future medicals (per Dr. Applebaum's report) …………………...$17,000.00

               Total  $29,176.00

## DEBTOR'S LIABILITY

27. In California, dog owners are strictly liable for bites and injuries that their dogs cause to other human-beings. Civil Code, section 3342 states in pertinent parts: "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness."

## VALUE OF THIS CASE

28. Please note that without being arrogant, Plaintiff's state court counsel has a track record of obtaining excess verdicts when insurance companies do not honor their promise to protect

7/3-12:51am

-8-

policyholders. For example, just in 2018 alone, said firm obtained a $12,000,000.00 judgment on a $250,000.00 policy and $1,925,000.00 verdict on a $100,000 policy. The value of this case at trial is between $4,000,000.00 and $5,000,000.00.

**BELINDA KIM JARVIS vs SALVADOR PEREZ, LASC #BC670261**

29. On 7-28-2017, Plaintiff sued the Debtor for strict liability per California Civil Code § 3342, § 3342.5, negligence, & premises liability in *Belinda Kim Jarvis vs Salvador Perez*, LASC #BC670261.

30. On 10-1-2018, the Debtor filed for Chapter 13 bankruptcy protection, 2:18-bk-21560-VZ, omitting Plaintiff from the Schedules of creditors, omitting her from the creditor mailing matrix, and omitting the lawsuit from the Statement of Financial Affairs.

31. The Debtor's insurance company is General Star Indemnity Company, Policy Number: IMA330957, and the insureds are Salvador Perez dba Design Upholstery, with a policy limit of $1,000,000.00.

32. On 12-19-2018, Plaintiff issued Debtor a CCP section 998 offer to settle for $1,000,000 to be accepted by 1-18-2019 at 5:00pm. The implied covenant of good faith and fair dealing imposes on General Star Indemnity Company, an insurer, a duty to settle within the policy limits if it would be unreasonable not to do so. (*Johansen v. California State Auto. Assn. Inter-Ins. Bureau*, (1975) 15 Cal.3d 9, 14-16.) If General Star unreasonably refuses to settle, it is liable for the entire amount of any subsequent judgment against the insured, even if that judgment is in excess of the policy limits. Plaintiff's CCP 998 Offer was rejected by operation of law.

33. The current demand is $10,000,000.00, but a fair valuation is $5,000,000.00. The evidence of the claim are the photographs of the bites to Plaintiff's face and the medical report from Dr. Robert Applebaum.

///

**CAUSE OF ACTION FOR NONDISCHARGEABILITY OF DEBT TO**

**PLAINTIFFS UNDER 11 U.S.C. § 1328(a)(4)**

34. Plaintiff repeats, realleges and embodies herein by this reference paragraphs 1-33 above, as if fully set forth herein.

35. In relevant part, 11 U.S.C. § 1328(a) provides as follows.

> "[T]he court shall grant the debtor a discharge of all debts provided for by the plan ...except any debt – (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual."

36. Plaintiff alleges that the claims for relief arising from the actions Defendant, as set forth herein, are non-dischargeable pursuant to 11 U.S.C. § 1328(a)(4) in that it reflects "willful and/or malicious injury by the debtor to another entity or the property of another entity."[2]

37. Each of the actions of Defendant set forth herein were undertaken willfully and/or with the malicious intent to cause excruciating pain and significant injuries to Plaintiff for purposes

---

[2] "Willful" conduct, in the context of personal injury, entails a deliberate or intentional injury and not merely an injury resulting from a deliberate or intentional act. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (§ 523(a)(6)). The debtor must either subjectively have intended to cause injury or have believed injury was substantially certain to result. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th 14 Cir. 2002) (§ 523(a}(6)) ("*Su*"). The requisite state of mind may be established by circumstantial evidence that tends to show what the debtor must actually have known when acting in the manner that produced injury. *Su*, 290 F.3d at 1146 n.6. Some acts are so inherently wrongful that the very nature of the act testifies to intent: i.e., res ipsa loquitur. The facts alleged herein supports a determination that the Defendant's conduct was "willful" under the requisite standard. "Malicious" connotes ill will, animosity, and a desire to do harm for harm's sake. A wrongful, intentional act that is done without just cause or excuse and that necessarily causes injury. *Su*, 290 F.3d at 1146-47; *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001); Introductory Note, Restatement (Second) of Torts, Div. 7, Ch. 29 ("Restatement"). Here, there is direct evidence and findings by the USDC of factual malice. The facts alleged in the First Amended Complaint support a determination that the Defendant's conduct was "malicious" under the requisite standard of being wrongful, intentional, inexcusable, and necessarily damaging to Plaintiff.

of 11 U.S.C. § 1328(a)(4). Although proof of either "willful" conduct or "malicious" conduct are all that 11 U.S.C. § 1328(a)(4) requires, the facts alleged in this case demonstrate both. The injury was both "willful and/or "malicious." As such, the facts provide adequate, independent reasons for concluding that the intent element of 11 U.S.C. § 1328(a)(4) has been satisfied.

a. This lawsuit of *Belinda Kim Jarvis v. Salvador Perez*, stems from a vicious dog bite incident that occurred on January 12, 2017. On that date, Salvador Perez's dog, Kiko, viciously attacked Plaintiff's face. The incident occurred at Defendant's business, Design Upholstery located at 316 N. Avalon Blvd., Wilmington, California. Plaintiff was a residential tenant at Defendant's upholstery business. Defendant illegally converted a business property for residential leasing. He admitted in his deposition that the building is not permitted for residential living. Defendant also rents out space in his upholstery business for vehicle repairs. He admitted that he does not have a permit to conduct an auto repair business.

b. Defendant keeps Kiko at his business as a guard dog. He misrepresented to Plaintiff that Kiko was "safe" even though he kept Kiko as a guard dog for his commercial property which was open to the public. He did not tell Plaintiff that Kiko was a guard dog before she moved in.

c. Kiko was not licensed at all. After the subject dog bite incident, Animal Control visited the premises and found that Defendant's dogs were unlicensed. Defendant was unable to provide vaccination records to Animal Control because he administered the vaccines himself. He was cited for violation of: LAMC 53.66 for failure to comply with guard dog requirements, LAMC 53.15(e) for failure to obtain dog licenses, and LAMC 53.24 for failure to show proof of current rabies vaccines.

d. Defendant purchased an unidentified vaccine in Tijuana, Mexico and

        self-administered it to Kiko. He did not ask a veterinarian who practices in the United States about what medication he should give to his dog before self-administering vaccines to Kiko.

    e.   Defendant never enrolled Kiko in any obedience or behavioral training even though he kept Kiko as a guard dog in a public place of business. In fact, the only training Kiko received was from Defendant himself who has no dog behavior training or experience and it was limited to training Kiko to relief itself outdoors.

    f.   Before the subject incident, Plaintiff had informed Defendant that Kiko would growl, bark, and snarl at her when she was simply trying to come and go from her room. Plaintiff had to walk pass Kiko to get to her room. On several occasions, Plaintiff had to call Defendant to restrain Kiko who was acting aggressively towards her so she could leave her room.

    g.   Throughout the case, it was Defendant's position that Plaintiff provoked the dog bite. In deposition, Defendant testified that a mechanic working in the back of the upholstery shop named Guillermo Santiago Acosta witnessed the incident and told him that Plaintiff provoked the dog bite. However, Mr. Acosta unequivocally refutes this. Mr. Acosta testified that he did not see what happened before Plaintiff was attacked by Kiko, nor did he tell anyone that he did saw Plaintiff falling on the dog.

    h.   Before Mr. Acosta's deposition, Defendant told him to say that he saw Plaintiff was pushed and that she fell on top of Kiko. Mr. Acosta refused and told Defendant that was not what he witnessed. In retaliation for refusing to commit perjury, Defendant attempted to evict Mr. Acosta.

    i.   Defendant should have known, or did know, that a guard dog such as Kiko was dangerous. "It is reasonably foreseeable that a guard dog kept in a business open to the general public will injure someone; the purpose of such animals is to protect the

premises and it is highly unlikely that they are docile by nature." *Portillo v. Aiassa*, (1994) 27 Cal.App.4th 1128, 1135. Yet, he recklessly disregarded public safety by self-administering medications to Kiko without knowing the effects it may have had on Kiko's behavior. He kept an unlicensed dog on the premises which caused Plaintiff severe and permanent injuries to her face.

j. Defendant knew Kiko was aggressive towards his tenant, Plaintiff, months before the dog bite. Yet, he chose to do nothing. Before the subject incident, Plaintiff had informed Defendant that Kiko would growl, bark, and snarl at her when she was simply trying to come and go from her room. Plaintiff had to walk pass Kiko to get to her room. On several occasions, Plaintiff had to call Defendant to restrain Kiko who was acting aggressively towards her so she could leave her room. After the attack, Plaintiff decided to move out. Fearful that Kiko will attack again, Plaintiff asked Defendant's son to restrain Kiko while she moved her things. He refused to do so despite the recent attack by his guard dog. Before and after the mauling, Defendant acted despicably and in conscious and willful disregard of the safety and rights of his tenant, Plaintiff.

38. As a result of Defendant's actions identified herein, Plaintiff was damaged in excess of $5,000,000, plus interest which continues to accrue.

39. Accordingly, pursuant to 11 U.S.C. § 1328(a)(4), the above described claims for relief are non-dischargeable

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court, upon trial:

1. For a determination that the claim(s) for relief set forth herein are nondischargeable pursuant to 11 U.S.C. § 1328(a)(4) in that they reflect "willful and malicious injury by the debtor to another entity or the property of another entity."

2. Order that the Defendant's indebtedness to Plaintiff in excess of $5,000,000, plus interest,

7/3-12:51am

-13-

1 | costs and attorneys' fees constitutes a nondischargeable debt pursuant to 11 U.S.C. §
2 | 1328(a)(4).

3. Grant a nondischargeable judgment in the amount of $5,000,000 in favor of Plaintiff and against the Defendant plus prejudgment and postjudgment interest as provided by law, reasonable attorney's fees, costs and expenses, and for punitive and exemplary damages in an amount to be proven at trial;

4. Grant Plaintiff such other and further relief to which Plaintiff may be justly entitled;

DATED:      July 3, 2019            LAW OFFICE OF BARUCH C. COHEN
                                    A Professional Law Corporation

                                    By    /S/ Baruch C. Cohen
                                    Baruch C. Cohen, Esq.
                                    *Attorneys For Plaintiff Belinda Jarvis*

7/3-12:51am

B1040 (FORM 1040) (12/15)

|  ADVERSARY PROCEEDING COVER SHEET  (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER  (Court Use Only) |
|---|---|
| **PLAINTIFFS** BELINDA JARVIS | **DEFENDANTS** SALVADOR PEREZ, DBA FDBA DESIGN UPHOLSTERY |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)  BARUCH C. COHEN  BARUCH C. COHEN, ESQ.  LAW OFFICE OF BARUCH C. COHEN, APLC  4929 WILSHIRE BOULEVARD, SUITE 940  LOS ANGELES, CA 90010  323-937-4501 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)  ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin  ☒ Creditor  ☐ Other  ☐ Trustee | **PARTY** (Check One Box Only)  ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin  ☐ Creditor  ☐ Other  ☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)  COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 1328(a)(4) [VICIOUS DOG BITE CASE] ||

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☒ 65-Dischargeability - other  11 U.S.C. § 1328(a)(4)

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 5,000,000.00 |
| Other Relief Sought ||

B1040

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||| 
|---|---|---|
| NAME OF DEBTOR<br>SALVADOR PEREZ, DBA FDBA DESIGN UPHOLSTERY | BANKRUPTCY CASE NO.<br>2:18-bk-21560-VZ ||
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT OF CALIFORNIA | DIVISION OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>ZURZOLO |
| RELATED ADVERSARY PROCEEDING (IF ANY) |||
| PLAINTIFF BELINDA JARVIS | DEFENDANT SALVADOR PEREZ, DBA FDBA DESIGN UPHOLSTERY | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |||
| DATE<br>7/3/2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>BARUCH C. COHEN ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.